James R. THORNWELL, Plaintiff,

v.

UNITED STATES of America et al., Defendants.

Civ. A. No. 78–1845.

United States District Court, District of Columbia.

May 30, 1979.

Terry F. Lenzner, Avrum M. Goldberg, Randall L. Speck, Judith E. Lesser, Washington, D. C., Harvey M. Kletz, Lawrence E. Moll, Oakland, Cal., for plaintiff.

Barbara Allen Babcock, Earl J. Silbert, William G. Schaffer, John J. Farley, III, John L. Euler, Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM OPINION

CHARLES R. RICHEY, District Judge.

This case is before the Court on defendants' motion to dismiss. Plaintiff, Mr. James Thornwell, is a former serviceman who seeks to recover for injuries which he sustained both before, and after, his discharge from the United States Army. The named defendants include the United States as well as twenty-nine individuals who, Mr. Thornwell asserts, all participated in the tortious conduct which led to his injuries. Although Mr. Thornwell may have employed a shotgun approach in naming his defendants, the defendants attempt to benefit from the same method in their motion to dismiss. The motion before the Court raises a host of substantive and procedural issues and, after reviewing the relevant statutes and case law, the Court is drawn to the conclusion that it must dismiss counts I, II, III, and IV, as well as counts VII and VIII. The Court, however, shall deny defendants' motion to dismiss Counts V and VI. The Court also rejects defendants' assertion that venue is improper and it postpones a definitive ruling on their claim that personal jurisdiction is wanting.

## I. BACKGROUND

On a motion to dismiss the Court must assume not only the truth of plaintiff's allegations but also all reasonable inferences which may be deduced from those allegations. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Thus, the Court accepts the truth of Mr. Thornwell's charge that he has been the victim of a brutal and shameless scheme of human experimentation and that for sixteen years, a host of government officials have successfully barred him from discovering the cause of the mental anguish which has shattered his life.

The first incident from which Mr. Thornwell's claims arise occurred in France in June 1961. At the time, Mr. Thornwell was a private in the United States Army, and he had been imprisoned as part of an Army investigation into the theft of approximately one hundred classified documents. While in prison, Mr. Thornwell was subjected to a battery of harsh interrogation techniques: He was confined "for months" to a small, windowless, unlit "isolation chamber," where he was deprived of sleep and toilet facilities; he was interrogated for as long as seventy hours at a time; during interrogation he was "physically abused," "terrified with threats of . . . death," and "degraded by a steady stream of verbal abuse, including racial slurs and accusations of sexual impropriety." Complaint ¶ 39 (filed Oct. 2, 1978).

This phase of Mr. Thornwell's interrogation ended when a special team of Army officers arrived on the scene as part of "Operation Third Chance." Operation Third Chance was a covert program designed to test the utility of a psychedelic chemical, lysergic acid diethylamide ("LSD"), as an aid to interrogation; it involved the surreptitious, nonconsensual administration of LSD to foreign nationals who were then questioned under conditions of extreme physical and mental stress. Evidently, by special permission, Mr. Thornwell became the sole exception to the "foreign national" limitation on the scope of Operation Third Chance. *Id.* ¶ 36.

As part of this covert program in human experimentation, Mr. Thornwell was secretly drugged with LSD and then subjected to further physical and mental degradation. The official report prepared by the Operation Third Chance special purpose team explained that the experiment on Mr. Thornwell demonstrated the "usefulness of employing as a duress factor the device of inviting the subjects' attention to his [LSD] —influenced state and threatening to extend this state indefinitely, even to a permanent condition of insanity or to bring it to an end at the discretion of the interrogators. . . ." *Id.* ¶ 41. The report also concluded that in Mr. Thornwell's case, the drug produced an "extreme paranoic reaction" which was "highly sustained and almost incapacitating." *Id.* ¶ 40. Four months after the test, Mr. Thornwell received a general discharge from the Army.

The transformation to civilian status, however, did not free Mr. Thornwell from the wrongs inflicted by his alleged tortfeasors. Despite his efforts to ascertain the cause or causes of his condition of ceaseless misery, the defendants deliberately concealed from him the facts and circumstances of the drug experiment. *Id.* ¶¶ 46–48. Even after the Department of Defense had assured Congress that the facts of LSD testing would be disclosed to all subjects of the experiments, Mr. Thornwell remained uninformed about his own participation in the tests. In the alternative, Mr. Thornwell claims that the defendants, who had assumed the burden of aiding men in his condition, were negligent in failing to provide him with examinations and treatment.

This non-consensual venture in human experimentation has, Mr. Thornwell asserts, caused him the gravest injury. As a direct consequence of the surreptitious drugging and the subsequent cover-up, Mr. Thornwell complains that for the last seventeen years, he has suffered—and continues to suffer—from serious mental illness and severe physical pain. Moreover, during this same period, he has been unable to maintain any gainful employment for more than short periods. In sum, Mr. Thornwell has been

transformed from a productive, healthy individual into an isolated social and emotional cripple, deprived of the pleasant experiences of human society. *Id.* ¶¶ 56–60.

Mr. Thornwell's complaint is phrased in terms of eight separate counts. In count I, he alleges that a sub-group of the defendants violated his privacy rights under the first, fourth, fifth and ninth amendments, by surreptitiously administering LSD and then conducting interrogations under conditions of severe stress. Count II asserts that these same acts deprived him of his right to due process under the fifth amendment and count III claims that the conduct was cruel and unusual punishment violative of the eighth amendment. Count IV sounds in common law tort and alleges that the drugging and harassment constitute assault and battery, as well as intentional infliction of emotional distress. Counts V and VI address the wrongs which occurred after Mr. Thornwell's discharge from the military: in count V, he alleges that the defendants' concealment of the drugging and their failure to provide him with follow-up medical treatment violated his due process rights under the fifth amendment; in count VI, he alleges that the failure to provide follow-up assistance, by itself, was negligent. Counts VII and VIII assert that the drugging and cover-up violate 42 U.S.C. §§ 1985(3) and 1986, respectively.

## II. THE COURT MUST DISMISS PLAINTIFF'S CLAIM FOR INJURIES OCCURRING WHILE ON ACTIVE DUTY

■ In *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), the Supreme Court established the doctrine of intra-military immunity, and where plaintiffs have sought recovery for injuries sustained in the course of military service, lower courts have consistently construed the *Feres* doctrine of immunity broadly. *Feres* actually belongs to a series of Supreme Court decisions involving the tort liability of the military. In the first case, *Brooks v. United States*, 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed. 1200 (1949), the petitioner was a soldier who had been struck by a military car while he was on furlough; the Court ruled that, in view of the petitioner's lack of involvement in military affairs at the time of the accident, recovery was appropriate. The following year, in *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), the Court reviewed three claims by soldiers who had been harmed by the negligence of their military superiors; it concluded, "[T]he Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." 340 U.S. at 146, 71 S.Ct. at 159. Finally, in *United States v. Brown*, 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954), the Court examined the claim of a veteran who alleged medical malpractice by an Army surgeon in the course of treating a wound received six years earlier while on active duty in the armed services. Relying on Mr. Brown's "civilian status" at the time of the alleged wrong, 348 U.S. at 112, 75 S.Ct. 141, the Court ruled that *Feres* had no application. Although all three of these decisions involved liability under the Federal Tort Claims Act, it is clear that the doctrine of immunity also extends to defendants named in their individual capacity. *Bailey v. DeQuevedo*, 375 F.2d 72 (3d Cir.), *cert. denied*, 389 U.S. 923, 88 S.Ct. 247, 19 L.Ed.2d 274 (1967); *Levin v. United States*, 403 F.Supp. 99, 104 (D.Mass.1975).

Recently, in *Stencel Aero Engineering Corp. v. United States*, 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977), the Supreme Court had an opportunity to re-consider *Feres*, and it again elected a broad application of the decision. In addition, the Court explained the three factors underlying the *Feres* doctrine of intra-military immunity:

[F]irst, the relationship between the Government and members of its Armed Forces is " 'distinctively federal in character,' " . . .; it would make little sense to have the Government's liability to members of the Armed Services dependent on the fortuity of where the soldier happened to be stationed at the time of the injury. Second, the Veterans'

Benefits Act establishes, as a substitute for tort liability, a statutory "no fault" compensation scheme which provides generous pensions to injured servicemen, without regard to any negligence attributable to the Government. A third factor [is] "[t]he peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the Tort Claims Act were allowed for negligent orders given or negligent acts committed in the course of military duty . . .." 431 U.S. at 671, 97 S.Ct. at 2058 (quoting *Feres v. United States, supra,* 340 U.S. at 143, 71 S.Ct. 153 and *United States v. Brown, supra,* 348 U.S. at 112, 75 S.Ct. 141, respectively.) The application of these factors to Mr. Thornwell's claims compels the conclusion that counts I–IV must be dismissed.[1]

Plaintiff asserts that his case is factually distinguishable from the situations involved in *Feres* because he seeks recovery for intentional torts as well as constitutional violations. Although in *Feres,* the Supreme Court only reviewed claims alleging negligence on the part of the military, neither the language nor the rationale of the Court's decision indicates that the legal theory of a soldier's claim ought to be a salient factor in determining the scope of intra-military immunity. In explaining its holding, the Court broadly provided immunity for *"injuries"* which "arise out of or are in the course of activity incident to [military] service." 340 U.S. at 146, 71 S.Ct. at 159 (emphasis added). The constitutional and intentional tort claims raised in counts I–IV clearly involve such injuries. In addition, recovery for intentional torts, the elements of which may vary from jurisdiction to jurisdiction, would certainly impinge upon the "distinctively federal" relationship between the government and its armed forces. *See* 340 U.S. at 143, 71 S.Ct. 153. Moreover, intentional tort claims as well as claims for constitutional wrongs are both covered by the Veterans Benefits Act, 38 U.S.C. § 301 *et seq.* (1976). *See* 431 U.S. at 671, 97 S.Ct. 2054. Finally, "[t]he peculiar and special relationship of the soldier to his superiors," 348 U.S. at 112, 75 S.Ct. at 143, would be affected by *any* personal injury claim, whether phrased in terms of negligent, intentional or constitutional wrong. Accordingly, *Feres v. United States, supra,* by itself, compels the dismissal of counts I–IV.

Other courts have also uniformly recognized that the *Feres* bar extends to both constitutional and intentional torts. In *Citizen's National Bank of Waukeegan v. United States,* No. 77–1974, slip op. at 7 (N.D.Ill.Feb. 15, 1978), the court explained, "[T]he logic of *Feres* does not permit a principled distinction between negligent and intentional torts." *Accord, Levin v. United States,* 403 F.Supp. 99 (D.Mass. 1975); *Rotko v. Abrams,* 338 F.Supp. 46 (D.Conn.1971), *aff'd per curiam,* 455 F.2d 992 (2d Cir. 1972). The court further noted that such a distinction was without precedent. No. 77–1974, slip op. at 6. In *Misko v. United States,* 453 F.Supp. 513 (D.D.C. 1978), *aff'd mem. on other grounds,* 193 U.S.App.D.C. 217, 593 F.2d 1371 (1979), Judge Sirica similarly found that the *Feres* bar extended to constitutional claims. The identical conclusion was recently reached in *Jaffee v. United States,* 468 F.Supp. 632 (D.N.J.1979).[2]

1. In holding that counts I–IV must be dismissed, the Court acknowledges the precedent of *Feres,* but does not offer any approval for the sweep of that decision. Indeed, to this Court, *Feres* appears to grant an immunity which is broader than necessary and, as a result, the application of that immunity may at times lead to unconscionable results. Recently, in *Jaffee v. United States,* 468 F.Supp. 632 (D.N.J.1979), the following colloquy occurred at oral argument before Judge Sterm:

> The Court: [A]s I read the law it doesn't matter if they stood up there and, "one, two, three, left, right, left," and marched them over a cliff . . . You'd be protected under *Feres* . . ."
> The Govt: Yes, your Honor.

*Id.* at 635. *See generally* Note, Military Law, 1978 Ann.Survey Am.L. 631, 649–51.

2. The defendant United States has also raised 28 U.S.C. § 2680(k) as a bar to recovery. Although the Court's ruling under *Feres* renders

Accordingly, this Court concludes that counts I–IV must be dismissed.

## III. UNDER *GRIFFIN v. BRECKEN-RIDGE,* 403 U.S. 88 [91 S.Ct. 1790, 29 L.Ed.2d 338] (1970), THE COURT MUST DISMISS COUNTS VII & VIII

■ In count VII, Mr. Thornwell seeks recovery for defendants' alleged violation of 42 U.S.C. § 1985(3). Count VIII is based on 42 U.S.C. § 1986, which permits recovery against individuals who fail to prevent the conduct proscribed by section 1985(3). In light of two factors—(1) the Court's decision to bar all of plaintiff's claims arising out of his service in the Armed Forces, and (2) *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1970),—counts VII and VIII must be dismissed. Yet, because of the early stage of this litigation, the dismissal is without prejudice. In the event that, through discovery, plaintiff collects evidence which satisfies the standard established in *Griffin v. Breckenridge, supra,* he will certainly be entitled to renew these two claims.

First, in dismissing counts I–IV, the Court held that the *Feres* bar extended to *all* personal injury claims which arise out of, or are incident to, service in the Armed Forces. Although counts VII and VIII seek recovery for injuries sustained in the course of active duty as well as those incurred after discharge, this Court's holding with respect to counts I–IV compels the conclusion that these two counts are barred to the extent that they pertain directly to Mr. Thornwell's service in the Army. *See Birdwell v. Schlesinger,* 403 F.Supp. 710, 718 (D.Colo.1975). With respect to the remainder of counts VII and VIII—that portion involving post-discharge discrimination—it appears that the plaintiff's complaint has failed to satisfy the criteria established in *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1970).

In *Griffin,* the Court explained that a claim under section 1985(3) required a showing of "some racial or perhaps otherwise class based, invidiously discriminatory animus behind the conspirator's action." 403 U.S. at 102, 91 S.Ct. at 1798. In alleging plaintiff's active duty injuries, the complainant attempts to meet this test by merely hinting that race (Mr. Thornwell is black) was a factor in his selection for the drug test. Complaint ¶¶ 2 & 39(c) (filed Oct. 2, 1978). The complaint, however, is devoid of even the slightest suggestion that race was a factor in the defendants' post-discharge conduct. Due to the absence of any allegation of a class-based discriminatory animus, count VII must also be dismissed to the extent that it seeks to recover for defendants' treatment of the civilian Mr. Thornwell. Once count VII has been dismissed, count VIII, which relies on section 1986, must also be dismissed.

Both dismissals, however, are without prejudice. In the event that plaintiff, through discovery, gathers information which supports his allegations, he will certainly be entitled to renew his claims.

## IV. UNDER THE FACTS OF THIS CASE, MR. THORNWELL MAY RECOVER FOR POST–DISCHARGE NEGLIGENCE

■ In count VI, Mr. Thornwell seeks to recover for the injuries which resulted from the defendants' alleged negligence in failing to provide him with any follow-up examinations, supervision, or other medical treatment during the seventeen years after his discharge. The Court finds that recovery for these post-discharge injuries is not merely consistent with *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), but also compelled by *United States v. Brown,* 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139˙(1954).

unnecessary extensive analysis of § 2680(k), the statutory construction offered by *In re Paris Air Crash of March 3, 1974,* 399 F.Supp. 732, 737 (C.D.Cal.1975) suggests that Mr. Thornwell's pre-discharge claims may not have arisen in France. Under the simplistic approach of

*Welch v. United States,* 446 F.Supp. 75, 76 (D.Conn.1978), and *Pedersen v. United States,* 191 F.Supp. 95 (D.Guam 1961), section 2680(k) may bar any action against the United States, but *In re Paris Air Crash, supra,* is clearly the superior rule.

In *United States v. Brown, supra,* the Supreme Court held that the *Feres* bar did not apply to an injury sustained by a veteran six years after his discharge. In permitting the plaintiff to recover for the negligent operation performed at a Veterans' Administration Hospital, the Court relied upon his "civilian status" as the distinguishing feature between his situation and that of the *Feres* plaintiffs. 348 U.S. at 112, 75 S.Ct. 141. Because Brown was not "on active duty or subject to military discipline," the doctrine of intra-military immunity could have no application. *Id.* Like the plaintiff in *Brown,* Mr. Thornwell was civilian at the time the defendants allegedly failed to provide him with adequate care and treatment and thus, under *Brown,* he has stated the elements of valid claim.

Moreover, recovery for these post-discharge injuries is fully consistent with the rationale of *Feres.* In reviewing the personal injury claims of servicemen, courts have recognized that the precise relationship at the time of the wrong between the plaintiff and the military is a critical factor. *E. g., Bankston v. United States,* 480 F.2d 495 (5th Cir. 1973) (remand to determine if plaintiff had been discharged at the time of the alleged malpractice). If the plaintiff is a civilian when the alleged negligence occurs, immunity serves no valid purpose. With civilian status, the "peculiar and special relationship of the soldier to his superiors," *United States v. Brown, supra,* 348 U.S. at 112, 75 S.Ct. at 143, ceases and, as a result, the maintenance of a lawsuit will not have a deleterious effect on military discipline. Moreover, another factor critical to *Feres*—the "distinctively federal relationship" between the government and the members of its Armed Forces, 340 U.S. at 143, 71 S.Ct. 153—is completely vitiated by an individual's change to civilian status:

for civilians, there is no longer any relationship to be protected. Finally, the possibility of a statutory, "no fault" recovery, the third factor supporting *Feres,* is certainly more remote for veterans than for enlisted men. Although section 351 of title 38, United States Code, allows "no fault" recovery for veterans, its scope is much narrower than sections 310 and 331, the statutes which determine compensation for injured soldiers.[3] Indeed, because recovery under section 351 is limited to injuries suffered as the result of medical treatment "awarded under any of the laws administered by the Veterans' Administration," it would appear that as a veteran, Mr. Thornwell has no statutory right to compensation for the wrongs which allegedly occurred after his discharge.[4] In sum, the interests which underly the *Feres* doctrine are not threatened by Mr. Thornwell's recovery for his post-discharge injuries.

In recognizing the validity of Mr. Thornwell's negligence claim, the Court is fully aware of the difficulties which other courts have encountered in their treatment, under *Feres,* of torts which commence while the plaintiff is on active duty and then continue, unabated, until well after discharge. *Compare Schwartz v. United States,* 230 F.Supp. 536 (E.D.Pa.1964) *with Henning v. United States,* 446 F.2d 774 (3d Cir. 1971), *cert. denied,* 404 U.S. 1016, 92 S.Ct. 676, 30 L.Ed.2d 664 (1972). In *Feres,* the Supreme Court denied all recovery for a veteran who had a $30'' \times 18''$ towel removed from his stomach in the course of surgery performed eight months after his discharge; he complained that the towel had been left there following an abdominal operation performed while he was on active duty. 340 U.S. at 137 and 146, 71 S.Ct. 153. The Supreme Court's denial of this claim has led

---

3. Sections 310 and 331 provide recovery for injuries in the "line of duty" during war or peace. 38 U.S.C. §§ 310 & 331 (1976). Benefits under section 351 are only available to veterans who suffer an injury in the course of medical treatment "awarded under any of the laws administered by the Veterans' Administration." 38 U.S.C. § 351 (1976).

4. The defendants contend that Mr. Thornwell may recover for his pre-discharge injuries under 10 U.S.C. § 1552 (1976). This statute empowers military officials to alter "any military record . . . when . . . necessary to correct an error or remove an injustice." 10 U.S.C. § 1552 (1976). With a corrected record, Mr. Thornwell would presumably become entitled to veterans' benefits.

many lower courts to extend the doctrine of immunity to a variety of "continuing tort" claims. Applying *Feres,* the Third Circuit dismissed a veterans' claim in which the alleged misreading of x-rays first occurred while he was on active duty and then, in the months following his discharge, the Army continued to fail to inform him of the true content of the x-rays.[5] *Henning v. United States,* 446 F.2d 774 (3d Cir. 1971), *cert. denied,* 404 U.S. 1016, 92 S.Ct. 676, 30 L.Ed.2d 664 (1972). Also, in *Wisniewski v. United States,* 416 F.Supp. 599 (E.D.Wis. 1976), the court dismissed a veteran's "continuing tort" claim arising out of the Army's failure to inform him of the results of a blood test; the original negligent nondisclosure occurred while plaintiff was in the Armed Services and then continued after his discharge. Whatever the broader implications of these two decisions, it is clear, at the very least, that a mere act of negligence which takes place while the plaintiff is on active duty and which then remains uncorrected after discharge, is not grounds for suit.[6]

Mr. Thornwell, however, does not allege a mere continuing negligent omission. He claims that he was *intentionally* harmed while he was on active duty and he further claims that, after he became a civilian, the defendants failed to exercise their duty of care by neglecting to rescue him from the position of danger which they had created. Although the precise nature of the duty of care upon which the plaintiff relies is not clear,[7] Mr. Thornwell's claims for in-service, and out-of-service, injuries certainly involve two distinctly separate patterns of conduct, one intentional and negligent. Thus, he has alleged two entirely different torts, and even though the first tort occurred in the course of his military service, the second did not. In *Henning v. United States,* 446 F.2d 774, 777 (1971), the Third Circuit explained, "We think that *Feres* focuses not upon when the injury occurs or when the claim becomes actionable, but rather the time of, and the circumstances surrounding the negligent act." In count VI, Mr. Thornwell's complaint is perfectly clear in its allegation that the negligent act occurred, *in its entirety,* after he attained civilian status. Thus, his claim is valid.

This Court is, of course, not the first to acknowledge the validity of claims alleging the negligent aggravation of a previous, albeit immunized, wrong. In *Hungerford v. United States,* 192 F.Supp. 581 (N.D.Cal. 1961), *rev'd on other grounds,* 307 F.2d 99 (9th Cir. 1962), the court recognized the legitimacy of a veteran's recovery for the "unnecessary continuation" of an earlier injury: although the original active duty misdiagnosis was protected by *Feres,* allegations of later misdiagnoses were held to state a claim. More importantly, in *Schwartz v. United States,* 230 F.Supp. 536 (E.D.Pa.1964),[8] the court awarded judgment to a veteran for injuries arising out of his treatment with a "radioactive contrast dye" while still enlisted in the Navy. In *Schwartz,* the plaintiff, like Mr. Thornwell in this case, made no claim that his original

---

5. *Cf. Jaffee v. United States,* 592 F.2d 712 (3d Cir.), *cert. denied,* —— U.S. ——, 99 S.Ct. 2406, 60 L.Ed.2d 1066 (1979) (holding that equitable relief may be available in cases of "continuing negligence").

6. In upholding count VI, the Court recognizes only *Feres* and *Brown* as binding precedent. It expressly declines to assess the wisdom of *Henning v. United States, supra,* and *Wisniewski v. United States, supra,* because it believes Mr. Thornwell's case distinguishable from both decisions. The Court, however, also believes that its holding in this case does not depart from the precedent of these two decisions.

7. It is not clear whether Mr. Thornwell is relying on a general duty of care, *see Schwartz v. United States,* 230 F.Supp. 536, 540 (E.D.Pa. 1964), or a duty of care arising out of official regulations or public promises.

8. The defendants submit that *Schwartz v. United States, supra,* was overruled in *Henning v. United States,* 446 F.2d 774 (3d Cir. 1971), *cert. denied,* 404 U.S. 1016, 92 S.Ct. 676, 30 L.Ed.2d 664 (1972). *Schwartz,* however, is discussed in *Henning* and the Third Circuit makes no mention of any inconsistency between the two decisions. 446 F.2d at 778. Accordingly, the Court is not persuaded that *Henning* was intended to undermine the holding of *Schwartz;* if anything, the Third Circuit's treatment of *Schwartz* indicates approval of that decision. *Id.* See also note 6 *supra.*

treatment was negligent. His sole concern was with the negligent performance of medical tests taken over a twelve-year period following his discharge; the court awarded him a judgment based on this negligence. The court, however, acknowledged that, even without the improper testing, the plaintiff had a valid claim merely because the government had failed to administer follow-up treatment when it should have known that such treatment was crucial to his well-being:

> Long before 1957, when the ravages of the disease had made necessary the radical surgery upon the plaintiff, the Government doctors therefore should have been aware of the dangers of the drug. The Government should have reviewed the records of all patients to whom [the radioactive dye] had been given and warned them of the danger of its retention in their bodies. Accordingly, even if the plaintiff had never returned to a Government physician after his discharge from military service, there was a duty resting on the Government to follow up those cases in which [the dye] had been installed. The Government must be charged with knowledge that [the dye] had been used by its physicians at an earlier date, and its roentgenologists must have known of the danger of [the dye]. The negligence here is not in its installation, but rather in not having affirmatively sought out those who had been endangered after there was knowledge of the danger in order to warn them that in the supposedly innocent treatment there had now been found to lurk the risk of devastating injury.

230 F.Supp. at 540. The language of *Schwartz* is striking in its similarity to Mr. Thornwell's claim. Accordingly, it provides persuasive precedent for the Court's holding that when the duty of care is violated while the plaintiff is a civilian, courts must recognize the validity of his cause of action.

To summarize the relevant precedent, it appears that there are three types of personal injury cases which involve post-discharge negligence. In the first case, the military performs separate negligent acts (i. e., two improper operations), one before, and one after, discharge; *United States v. Brown*, 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954), and *Hungerford v. United States*, 192 F.Supp. 581 (N.D.Cal.1961), *rev'd on other grounds*, 307 F.2d 99 (9th Cir. 1962), both clearly indicate that the injured veteran may recover for the later act. In the second case, a single negligent act occurs and its effects linger after discharge; *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), holds that, under some circumstances, this one act is subject to intra-military immunity. Third, the military may commit an intentional act and then negligently fail to protect a soldier turned civilian from the dire consequences which will flow from the original wrong. This Court holds that, under such circumstances, the injured civilian may have a valid claim against the tortfeasors. The later negligence is a separate wrong, a new act or omission occurring after civilian status is attained; the perpetrators of this wrong must be held accountable for their conduct.

The Court is, of course, mindful of the possibility that artful pleading may be employed to elevate one continuing act of negligence into separate wrongs.[9] The defendants' however, have never contested the legitimacy of the distinction which plaintiff's complaint draws between the intentional wrongs inflicted while on active duty and the negligent omission occurring after his discharge. Nonetheless, if the defendants wish to show that the drugging of Mr. Thornwell was a mere accident—something akin to the careless surgeon's towel on *Feres*—then the Court will re-consider its decision in light of the "continuing negligence" line of precedent. Absent such a showing, the Court finds that count VI states a valid claim.

Finally, the Court notes that its refusal to dismiss count VI does not automatically entitle Mr. Thornwell to compensation for all of the injuries which he has alleged. The

---

**9.** See notes 4–6 *supra* and accompanying text.

plaintiff's injuries must be apportioned and he may recover only to the extent that defendants' post-discharge negligence aggravated or prolonged his condition. *See* W. Prosser, Handbook of the Law of Torts § 52 (4th ed. 1971).

In accordance with the foregoing, the Court denies defendants' motion to dismiss count VI of the plaintiff's complaint.

## V. PLAINTIFF MAY RECOVER FOR VIOLATIONS OF FIFTH AMENDMENT RIGHTS WHICH OCCUR AFTER DISCHARGE

█ Count V of Mr. Thornwell's complaint is apparently an alternative charge to count VI's claim of negligence; it states that after his discharge, the defendants acted to conceal the LSD experiment from him and that they also failed to provide him with a follow-up examination and treatment. Complaint ¶ 72 (filed Oct. 2, 1978). Although plaintiff's complaint is hazy, the fifth amendment due process violation evidently arises out of the defendants' disregard for their own regulations. It may, however, also arise out of the defendants' egregious conduct, which shocks the conscience. The cover-up allegation is strongly suggestive of a charge that the defendants intentionally withheld the medical care which was vital to Mr. Thornwell's well-being.[10] The Court finds that count V states a valid claim.

### A. The Doctrine of Intra-Military Immunity Does Not Apply.

█ First, in reviewing count VI, the Court held that Mr. Thornwell's allegation of post-discharge negligence involved a course of conduct distinct and separate from the intentional wrongs which had occurred while he was on active duty. As a

result, the *Feres* doctrine of intra-military immunity had no application. Mr. Thornwell's allegation of an unconstitutional cover-up also involves a new course of conduct arising after the attainment of civilian status; thus, the rationale of this Court's approval of count VI compels the conclusion that count V also states a valid claim. Indeed, the case for the validity of count V is a simple one because the concept of immunity for a "continuing tort"[11] can have no application when intentional or unconstitutional conduct is involved. To hold that the military may deprive a civilian of his constitutional rights merely because the deprivation originated when the civilian was an enlisted man would be tantamount to declaring all veterans second class citizens. Men and women who have served in our Armed Forces, and to whom this nation is indebted beyond measurement, are certainly entitled to the constitutional liberties afforded all citizens. In short, if the military deprives a veteran of his constitutional rights, it may not look to *Feres* for immunity.[12]

### B. There is a Cause of Action For Damages Under The Fifth Amendment.

█ Apart from *Feres*, the defendants also contend that there can be no implied private right of action under the fifth amendment. In *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the Supreme Court recognized the validity of a cause of action for a violation of the fourth amendment; the defendants' however, argue that *Bivens* should be limited to suits under the fourth amendment. Although other courts have divided on the question of *Bivens'* application to fifth amendment claims,[13] this Court

---

10. The plaintiff may, of course, be entitled to amend his complaint to allege that this course of conduct constitutes a common law, intentional tort.

11. *See* notes 4–6 *supra* and accompanying text.

12. In denying immunity under *Feres*, the Court makes no ruling concerning an issue which neither party has raised—the extent of immuni-

ty, if any, available under *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978).

13. *Compare Davis v. Passman*, 571 F.2d 793 (5th Cir.), *cert. granted*, 439 U.S. 925, 99 S.Ct. 308, 58 L.Ed.2d 318 (1978) *with United States ex rel. Moore v. Koelzer*, 457 F.2d 892, 894 (3d Cir. 1972).

finds that violations of the fifth amendment may give rise to a valid cause of action.

In *Payne v. Government of the District of Columbia*, 182 U.S.App.D.C. 188, 559 F.2d 809 (1977), the Court of Appeals for this Circuit left open the question of the propriety of claims under the fifth amendment. The court, however, explained that *Bivens* "utilized a standard yielding guidance for similar treatment of other constitutional rights," and stated further, "[T]his court has indicated a willingness to consider a broader application" of *Bivens*. *Id.* at 198 and n. 49, 559 F.2d at 819 and n. 49. Later, in *Dellums v. Powell*, 184 U.S.App.D.C. 275, 300–302, 566 F.2d 167, 192–194 (1977), *cert. denied*, 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978), the court held that the rationale of *Bivens* justified suits for violations of the first amendment. This Court believes that *Dellums* and *Payne* both indicate that the Court of Appeals for this Circuit has rejected a narrow reading of *Bivens*. *See Founding Church of Scientology v. Director, Federal Bureau of Investigation*, 459 F.Supp. 748 (D.D.C.1978). Accordingly, under the law of this Circuit, the Court should recognize a cause of action under the fifth amendment. *Saffron v. Wilson*, 70 F.R.D. 51 (D.D.C.1975).

Apart from the precedent of *Payne* and *Dellums*, the Court finds independently that a restrictive interpretation of *Bivens* is inappropriate. The defendants rely on *Torres v. Taylor*, 456 F.Supp. 951 (S.D.N.Y.1978) in support of the proposition that plaintiff's allegations of a violation of the fifth amendment fail to state a claim. In *Torres*, Judge Weinfeld ruled that when relief was available under the Federal Tort Claims Act ("the Act"), a cause of action could not be implied for a violation of the fifth amendment. *Id.* at 954. With all due respect, the Court is not inclined to follow the *Torres* holding.

First, the Court believes that, in interpreting *Bivens, Torres* relies too heavily on Justice Harlan's concurring opinion which asserted that the Court held a constitutional cause of action proper because it was the *only* possible remedy for the alleged wrong. *Id.* at 953 (citing *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 409–410, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (Harlan, J., concurring)). However, the majority opinion clearly indicated that, even in the absence of a new cause of action, the wronged party would still not be without remedy:

Respondents do not argue that petitioner should be entirely without remedy for an unconstitutional invasion of his rights by federal agents. In respondents' view, however, the rights that petitioner asserts—primarily rights of privacy—are creations of state and not of federal law. Accordingly, they argue, petitioner may obtain money damages to redress invasion of these rights only by an action in tort, under state law, in the state courts.

403 U.S. at 390, 91 S.Ct. at 2001–2002. Thus, in *Bivens* the Supreme Court recognized that without an implied private right of action, the petitioner would not be remediless; he would only be without a remedy in the federal courts. Moreover, the Court explained, "[I]t is well settled that where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, *federal* courts may use any available remedy to make good the wrong done." *Id.* at 396, 91 S.Ct. at 2004 (quoting *Bell v. Hood*, 327 U.S. 678, 684, 66 S.Ct. 773, 90 L.Ed. 939 (1946) (emphasis added)). This Court finds that a cornerstone of *Bivens* is the strong federal interest in providing a remedy in the federal courts for violations of the United States Constitution.

■ Although in this case, the Federal Tort Claims Act may provide the federal remedy sought by the *Bivens* majority, it is clear that Congress has never intended the Act as the exclusive remedy for the tortious conduct of federal officials. In 1974, Congress amended the Federal Tort Claims Act to provide a remedy against the United States for wrongs committed by federal law enforcement or investigative officers. Act of March 16, 1974, Pub.L. No. 93–253, § 2, 88 Stat. 50. Rather than displace the *Bi-*

*vens* cause of action—the proper result under both Justice Harlan's analysis and *Torres*—Congress decided to retain suits under the fourth amendment which provide relief against federal officials in their individual capacity. The 1974 amendments to the Act show that Congress plainly intended to permit *Bivens* and Federal Tort Claims Act suits to exist side by side. S.Rep. No. 558, 93d Cong., 2d Sess. 3 (1974), U.S.Code Cong. & Admin.News 1974, p. 2789.

In addition, an exclusive remedy under the Act provides a less effective deterrent against constitutional violations than a direct action against federal officials. Although the Act may render more certain the injured party's recovery of some financial benefit, *Bivens* actions, by providing for recovery from the individuals responsible for the invasion of constitutional rights, should in the long run incrementally reduce the unconstitutional action of federal officials. *Cf. Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) (holding that application of remedy under the fourth amendment requires weighing the utility of the remedy against its costs). Recently, in *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 2910, 57 L.Ed.2d 895 (1978), the Supreme Court reached a similar conclusion: "In situations of [unconstitutional] abuse, an action for damages against the responsible [federal] officials can be an important means of vindicating constitutional guarantees."

Finally, a suit under the fifth amendment may well be the only cause of action which fully encompasses the wrongs which Mr. Thornwell has alleged. The facts stated on the face of his complaint appear to go far beyond the outrageous conduct which marks the common law tort of intentional infliction of emotional distress. The injury which he suffered was not mere "emotional distress," but rather a prolonged psychiatric disorder accompanied by severe physical pain. In addition, the defendants' conduct involved not only intentional harm to Mr. Thornwell, but also willful disregard of both Army regulations and public promises made by high ranking military officials. Perhaps the only tort which is capable of describing this course of conduct is one based upon the fifth amendment's guarantee that no person shall "be deprived of life, liberty, or property, without due process of law." U.S.Const. amend. V.

In accordance with the foregoing, this Court finds that count V of plaintiff's complaint states a valid cause of action and, as a result, defendants' motion to dismiss count V must be denied.

## VI. VENUE FOR THIS ACTION LIES IN THE DISTRICT OF COLUMBIA.

### A. 28 U.S.C. § 1391(b).

■ The individual defendants have also moved to dismiss on the grounds that venue is not proper in the District of Columbia. In light of both the principles recently explicated by the Court of Appeals for this Circuit in *Lamont v. Haig*, 192 U.S.App. D.C. 8, 590 F.2d 1124 (1978), and the limitations placed on plaintiff's suit by other portions of this opinion, the Court must conclude that venue is proper under 28 U.S.C. § 1391(b).[14]

In *Lamont v. Haig*, 192 U.S.App.D.C. 8, 16, 590 F.2d 1124, 1132 (1978), the Court of Appeals examined section 1391(b)'s language declaring venue proper in the judicial district "in which the claim arose." The Court of Appeals indicated that district courts need not pursue a literalistic search for the *one* judicial district in which a party's claim "arose." Instead, when "sophisticated multistate activities of relative complexity are in issue," *id.* at 17, 590 F.2d at 1133, a more flexible approach would be appropriate:

14. In *Lamont v. Haig*, 192 U.S.App.D.C. 8, 590 F.2d 1124 (1978), the Court of Appeals examined the venue considerations which a district court must weigh when federal officials are sued and it held that 28 U.S.C. § 1391(e) (1976), could not be applied to defendants who are only *former* federal officials. Accordingly, with respect to all but four of the 29 named individual defendants, section 1391(b) must control.

[W]here "the claim arose" should in our view be ascertained by advertence to events having operative significance in the case, and a commonplace appraisal of the implications of those events for accessibility to witnesses and records.

*Id.* at 18, 590 F.2d at 1134. The court further indicated that, even in situations where the evidence not in the parties' possession was most readily available "in areas in which none of the principal events in the suit occurred," the district court should accept venue "if the activities that transpired in the forum district were not insubstantial in relation to the totality of events giving rise to plaintiff's grievance." *Id.* at 18 n. 62, 590 F.2d at 1134 n. 62. In effect, the district court is charged not only with evaluating the contacts between the forum and plaintiff's allegations, but also weighing that forum's convenience for the litigants. Under this standard, the District of Columbia is clearly a proper judicial district for Mr. Thornwell's claim.

The exhibits which Mr. Thornwell has offered in support of his claim contain relevant correspondence involving Army officials headquartered in the District of Columbia. Also, in this forum, crucial Army studies on the effects of LSD were prepared and distributed. From Washington, D.C., Cyrus Vance, then general counsel to the Secretary of the Army, requested a specific review of Thornwell's case [15] and General Throckmorton and Lieutenant Colonel Brandenburg both supervised the review from that same Washington office.[16] Defendants Harold Brown, Cyrus Vance and other Secretaries of the Army acted in Washington, in their official capacity, to assume responsibility for the safety of subjects of LSD testing.[17] Also, in 1976, the Internal Revenue Service notified Mr. Thornwell from Washington that he might have been a victim of LSD experiments and the Service then neglected to follow up that notification. Complaint ¶¶ 50–53 (filed Oct. 2, 1978). There are, of course, far more contacts between the District of Columbia and the instant lawsuit, but a further review would serve no purpose. It is clear that numerous events which have "operative significance in the case," id. at 18, 590 F.2d at 1134, occurred in the District of Columbia. Moreover, it is equally clear that in terms of accessibility to witnesses, documents and other evidence, the District is as convenient as any other forum; indeed, it may well be the most convenient forum. Accordingly, with respect to the individual defendants, venue is proper under 28 U.S.C. § 1391(b).

*B. 28 U.S.C. §§ 1402(b) & 1391(e).*

█ For the defendant United States, the relative venue provision is 28 U.S.C. § 1402(b), which provides:

> Any civil action against the United States under subsection (b) of section 1346 of this title may be prosecuted only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred.

Also, for the four defendants named in their official capacity,[18] 28 U.S.C. § 1391(e) controls venue considerations and, in pertinent part, it states:

> A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States may, except

---

15. *See* plaintiff's Attachment A–10.

16. *See* plaintiff's Attachment A–11.

17. *See* plaintiff's Attachment C–2. The Court takes note that almost all of the documents relied upon to show venue were gathered through requests under the Freedom of Information Act, 5 U.S.C. § 552 *et seq.* (1976). Indeed, absent the Freedom of Information Act, Mr. Thornwell may never have discovered the information which led to the filing of this suit.

The just resolution of his claim is certainly one of the more visible benefits of this oft-slighted statute.

18. These four defendants are: Van M. Sim, Chief, Medical Research Division, Biomedical Laboratories; Clifford L. Alexander, Secretary, Department of the Army; Harold Brown, Secretary, Department of Defense; Charles C. Pixley, Surgeon General, Department of the Army.

as otherwise provided by law, be brought in any judicial district in which . . .

(2) the cause of action arose . . .

Like section 1391(b), section 1402(b) refers to *the* judicial district where the wrongful act occurred, thus suggesting that only one district is proper. Section 1391(e) is also susceptible to a similar, narrow interpretation. Yet, because *Lamont v. Haig, supra,* compels a broader reading of section 1391(b), this Court believes that sections 1391(e) and 1402(b) must be similarly construed. Indeed, it is well established that section 1391(e)'s reference to the district where the "cause of action arose" is identical to section 1391(b)'s language concerning the district "in which the claim arose." 15 Wright & Miller's Federal Practice and Procedure § 3815, at 95 (1976). Accordingly, in reviewing venue objections under sections 1391(e) and 1402(b), the Court must apply the same "preponderance of the contacts" test that it employed under section 1391(b), and under this test, it concludes that venue is proper for the United States and the four defendants named in their official capacity.

In view of the foregoing, the Court denies defendants' motion to dismiss for lack of venue.

## VII. DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION IS DENIED WITHOUT PREJUDICE

Finally, the defendants have also moved to dismiss plaintiff's claim for lack of personal jurisdiction. In their arguments before the Court, the parties have evidently assumed that plaintiff's complaint states, in its entirety, a valid claim. The Court, however, has ruled otherwise and accordingly several individual defendants, who may only have participated in the pre-discharge wrongs, may no longer be proper parties to this action. The Court is not now willing to assume the burden of culling the thirty

defendants to ascertain who among them was exclusively involved in pre-discharge activity. The parties are certainly more capable of performing this task and the Court encourages them to promptly re-examine the case with this issue in mind. Once the process of re-examination is completed, the Court will be better able to render an informed decision regarding personal jurisdiction. Accordingly, defendants' motion to dismiss for lack of personal jurisdiction shall be denied without prejudice to renewal.

The Court, however, notes the right to renewal will not extend to the four defendants [19] who were served in the District of Columbia; with respect to these individuals, the Court clearly has plenary *in personam* jurisdiction. The Court also has jurisdiction over the four individuals who were served in their present official capacity.[20] Moreover, the Court requests the plaintiff to inform the Court of his position with respect to the two defendants [21] who are now deceased.

## VIII. CONCLUSION

This Court finds that plaintiff has stated a valid cause of action with respect to the injuries allegedly incurred after his discharge. However, for those injuries received while on active duty, *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), bars all recovery. In addition, the District of Columbia is a proper judicial district in which to bring this action. Finally, the Court believes that most of the objections regarding personal jurisdiction are not directed to the plaintiff's claim as shaped by this decision; accordingly, in lieu of speculating about the post-discharge activity of each defendant, the Court has decided to provide the defendants with an opportunity to renew their motion in light of this opinion.

---

**19.** These four defendants are: Cyrus Vance, Robert S. McNamara, Stanley R. Resor, and George H. Decker.

**20.** These defendants are listed at note 17, *supra.*

**21.** These two defendants are former Surgeon General Richard R. Taylor and Emanuel Fusfield.

An order in accordance with the forego-ing will be issued of even date herewith.