Eugene **MUZYCHKA**, et al.

v.

Judith **TYLER**, et al.

**Civ. A. No. 82–3215.**

United States District Court, E.D. Pennsylvania.

April 18, 1983.

Neil E. Jokelson, Philadelphia, Pa., for plaintiff.

Angelo J. Foglietta, Chief Asst. City Sol., Philadelphia, Pa., for City of Philadelphia (Police Officers).

Serena H. Dobson, Asst. U.S. Atty., Philadelphia, Pa., for Agent Judith Tyler.

## MEMORANDUM

GILES, District Judge.

Judith Tyler, a Special Agent of the Federal Bureau of Investigation ("FBI") has moved for summary judgment claiming she is immune from liability on the grounds of qualified immunity. Because there may be a genuine issue of material fact for trial, defendant's motion is denied.

### I. BACKGROUND

This case [1] arises out of an investigation by the FBI concerning the manufacture and sale of methamphetamine in violation of Title 21, U.S.C. §§ 846 and 841(a)(1), in the Philadelphia, Pennsylvania area. From February through September, 1982, Special Agent Tyler was in charge of the investigation. According to her, as a result of investigation into a drug ring operated by Robert Hoffner and John Drum, she learned that Eugene Muzychka was a major supplier of the chemical P2P, a necessary ingredi-

---

1. Subject matter jurisdiction is premised on the existence of a federal question, 28 U.S.C. § 1331.

ent of methamphetamine.[2] (Tyler Affidavit, ¶ 2). A confidential source informed Tyler that Hoffner, Drum and others were planning to manufacture more methamphetamine and that a meeting was to take place during the afternoon of June 24, 1982, at a tavern named Hoff's Hut. According to the informant,[3] the purpose of the rendezvous was to meet with an individual who would supply chemicals necessary to manufacture the methamphetamine. (*Id.,* ¶ 10). At approximately 3:00 p.m. on June 24, 1982, Tyler observed Hoffner repeatedly looking at his watch as he paced up and down the sidewalk in front of Hoff's Hut. (*Id.,* ¶ 12). She drove around the block and saw Muzychka's silver Lincoln Continental double-parked next to Hoffner's Cadillac. She then radio-dispatched for a Philadelphia police squad car to meet her at the tavern. While waiting for the squad car, another Philadelphia police car drove up and offered assistance. She conveyed to the officer the informant's information which she had received, as well as her knowledge of the drug dealing activities of Hoffner, Drum and Muzychka. She also briefed the police officer on the types of chemicals that the subject might possess and the approximate size of the containers for those chemicals. (*Id.,* ¶ 13). When the second police car arrived, Tyler gave those officers the same briefing as given to the occupants of the first squad car. The first squad car had gone to the tavern to observe the suspects. After the second squad car went to the tavern, Tyler parked her car some distance away from Hoff's Hut.[4] She observed that Hoffner's car had left the tavern and had been stopped by the first police car. (*Id.,* ¶ 14).

According to Muzychka, he was a passenger in his car which was being driven by Drum. Hoffner was driving his car immediately behind Muzychka's vehicle when the Philadelphia police officers, under the direction of Tyler, converged upon the Hoffner car and signalled it to stop. Muzychka and Drum drove around the block and then stopped near the Hoffner car to see what was happening to him. (First Amended Complaint, ¶¶ 13, 14). Not having found any chemicals in Hoffner's car, the police proceeded to search Muzychka's vehicle as well as his person. Muzychka alleges that the uniformed police officers in the search ransacked both Hoffner's and his vehicle, including the locked trunks, without having search or arrest warrants or any probable cause. He also alleges that the police opened containers and briefcases and read documents which the plaintiff protested were confidential and subject to the attorney-client privilege relating to defenses in

**2.** Plaintiffs Hoffner and Drum and defendant Philadelphia police officer Walsh are no longer parties to this suit. However, police officers Hebding, Devery and Special Agent "John Doe" remain parties.

**3.** In her affidavit, Tyler described the "track record" of the informant. (Tyler Affidavit, ¶ 11). She knew that person to be highly reliable and that the information had resulted in the recovery of at least $30,000 worth of stolen property, five arrests and convictions and several search warrants. Additionally, her affidavit indicates that she corroborated the essential elements of the informant's tip before ordering the search. (*Id.,* ¶¶ 10, 12). Thus, the informant's tip would be sufficient to establish probable cause for a search under the *Aguilar-Spinelli* standard. *See Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). Under that test, an informer's tip may form the basis for a finding of probable cause if the police officer's affidavit sets forth the underlying circumstances necessary to enable the magistrate to judge independently the validity of the informant's tip and the officer shows that the informant was credible and his information was reliable. *Spinelli,* 393 U.S. at 416–18, 89 S.Ct. at 589–590. *See also Draper v. United States,* 358 U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327 (1959) (probable cause established when FBI agent corroborated all relevant facts supplied by reliable informer).

**4.** Tyler contends that she did not physically participate in the search because she had a confidential informant in her car whose presence she did not want made known to the subjects. (Tyler Affidavit, ¶ 14). However, according to the affidavit of Philadelphia Police Officer Charles Hebding, Tyler was on the sidewalk approximately twenty feet from the search and was engaged in an on-going conversation with Hoffner, the driver of the Cadillac. (Hebding Affidavit, ¶¶ 13–15).

pending federal criminal cases. Muzychka contends that despite his instructions and protestations not to read the documents, the police commenced to review, page by page, the privileged documents in both briefcases. (First Amended Complaint, ¶¶ 14–20). No contraband was seized.

Police Officer Hebding's affidavit presents still a third version of the facts. According to him, the searches of both vehicles were done voluntarily and only after the officers obtained the consent of the vehicle operators. (Hebding Affidavit, ¶¶ 10, 11, 21). He states categorically that no papers in the briefcases were read or even examined by any police officers or FBI agents at the scene (*Id.,* ¶ 11). According to him, he and his partner were briefed by Tyler to stop and search both vehicles for either drugs or large amounts of cash. (*Id.,* ¶ 5). Hoffner's car was stopped and the occupants patted down after the driver consented to a search of the car and voluntarily opened the trunk revealing an attache case. A police officer opened the briefcase to check for cash, drugs or weapons, saw none and quickly closed the briefcase. (*Id.,* ¶ 11). According to Hebding, the driver of the Cadillac had an ongoing conversation with agent Tyler during the course of the search. (*Id.,* ¶ 14). The search of the second vehicle that was originally identified by Tyler was also performed voluntarily and was equally cursory. During the search, Hebding saw an unzippered briefcase on the floor of the Lincoln-Continental behind the driver's seat. He put his hand inside, felt papers, but did not remove or read anything in the case. (*Id.,* ¶ 17). Hebding states that he and his partner were acting at the direction of Tyler, following her instructions to stop the two vehicles and search them for drugs, cash or weapons. (*Id.,* ¶ 21). He also states that at all times they believed that Tyler and her partner had probable cause to instruct the police officers to stop and search the cars and their occupants. (*Id.,* ¶ 22).

Muzychka asserts that the acts of the police officers and of the defendants, as he relates them, occurred pursuant to a conspiracy to violate his civil rights by performing unconstitutional searches, interfering with his right to counsel and due process and, further, subjecting him to the tort of assault and battery. Tyler brings this motion for summary judgment pursuant to Fed.R.Civ.P. 56, having asserted the affirmative defense of qualified immunity in her answer to plaintiff's complaint.

## II. DISCUSSION

In deciding defendant's motion for summary judgment, the court must resolve any doubts as to the existence of genuine issues of fact against her as the moving party and must view all reasonable inferences in the light most favorable to the plaintiff who is opposing the motion. *See Hollinger v. Wagner Mining Equipment Co.,* 667 F.2d 402, 405 (3d Cir.1981). The Third Circuit has emphasized that summary judgment is a "drastic remedy" which is never warranted except on a clear showing that no genuine issue of material fact remains for trial. *See Id.* at 405; *Ely v. Hall's Motor Trans. Co.,* 590 F.2d 62, 66 (3d Cir.1978); *Suchomajcz v. Hummel Chemical Co.,* 524 F.2d 19, 24 (3d Cir.1975). Considering the submitted evidence in view of this standard, I find that a question of material fact exists which could destroy Tyler's qualified immunity. Accordingly, for the reasons which follow, defendant's motion for summary judgment is denied.

Qualified or "good faith" immunity is an affirmative defense that must be pleaded by the defendant. *See Gomez v. Toledo,* 446 U.S. 635, 640, 100 S.Ct. 1920, 1923–1924, 64 L.Ed.2d 572 (1980). The Supreme Court recently held, in *Harlow v. Fitzgerald,* —— U.S. ——, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), that the good faith of the government official who is performing discretionary functions [5] is to be

---

5. Clearly, an FBI agent's decision whether to stop and search a suspect is a discretionary function entitling the agent to the defense of

qualified immunity. *See, e.g., Druckenmiller v. United States,* 548 F.Supp. 193, 194 (E.D.Pa.

tested by a purely "objective" standard rather than by the two-prong test of *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), which had both objective and subjective components. In setting forth the objective test for qualified immunity, the *Harlow* Court held that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." 102 S.Ct. at 2738. Thus, the threshold question on summary judgment centers not only upon what the currently applicable law is, but also upon "whether that law was clearly established at the time an action occurred." *Id.* at 2739. *See Ward v. Johnson,* 690 F.2d 1098, 1111 (4th Cir.1982) (*Harlow* analysis applied).

Applying *Harlow,* the threshold question to be answered in this case is whether the alleged conduct of the police officers, acting as the agents of the defendant in searching plaintiff's car and reading privileged documents, was so illegal as to violate clearly established law. *See Saldana v. Garza,* 684 F.2d 1159, 1165 (5th Cir.1982). *Harlow* suggests a two step analysis: first, what, if any, was the clearly established law at that time, and second, did defendant violate that law while performing a discretionary function within the scope of her employment as a government official?

I find that there was "clearly established law" at the time of the alleged action. Approximately three weeks before the search occurred on June 24, 1982, the Supreme Court, decided *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), a case very much on point. *Ross* involved a warrantless search of an automobile and containers found in its trunk by law enforcement officers who had received information from a reliable informant. Probable cause existed to believe that contraband was concealed somewhere within the *Ross* vehicle. 102 S.Ct. at 2159–60. The Supreme Court extended the automo-

bile exception to the warrant requirement established in *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), and held that:[1]

> the scope of the warrantless search authorized by that exception is no broader and no narrower than a magistrate could legitimately authorize by warrant. If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.

102 S.Ct. at 2172.

Justice Stevens, writing for the Court, explained that the scope of a warrantless search of a vehicle is "defined by the object of the search and the places in which there is probable cause to believe that it may be found" rather than by the nature of the container. *Id.*

■ Applying the holding of *Ross* to the facts of this case, it is at least arguable that the police exceeded the scope of the search of plaintiff's car by viewing documents claimed to be privileged when they had probable cause only to search for chemicals. It is unlikely that the police expected to find chemicals within the pages of documents asserted to be privileged under the attorney-client doctrine.

■ If the conduct of the police officers exceeded the legitimate scope of the warrantless search, there would have been a violation of plaintiff's fourth amendment rights. Admittedly, defendant Tyler cannot be held vicariously liable for constitutional violations performed by the Philadelphia police officers. *See Monell v. N.Y. City Dept. of Social Services,* 436 U.S. 658, 690–694, 98 S.Ct. 2018, 2035–2037, 56 L.Ed.2d 611 (1978) (no respondeat superior liability under 42 U.S.C. § 1983). *Ellis v. Blum,* 643 F.2d 68, 84 (2d Cir.1981) (§ 1983 law applicable to *Bivens*-type constitutional actions); *Paton v. La Prade,* 524 F.2d 862, 871 (3d Cir.1975) (because *Bivens*-type suit is federal counterpart of 42 U.S.C. § 1983, § 1983 standards are applicable). However,

1982) (FBI agents retain qualified immunity

when executing a facially valid arrest warrant).

defendant's own actions in directing the officers to stop and search plaintiff and his vehicle and in being physically present at or near the scene when the police were conducting the search are sufficient to establish that Tyler may have been personally involved in the allegedly illegal search. *See Armstrong v. Borie,* 494 F.Supp. 902, 906 (E.D.Pa.1980) (personal involvement is essential to find defendant police commissioner liable under § 1983; evidence must show commissioner participated in or had knowledge of events which were the subject of plaintiff's complaint). Accordingly, if the search were illegal and if Tyler directed it, she would not be shielded by qualified immunity from liability for civil damages. Since there remains a genuine issue as to the permissible scope of the search, summary judgment is improper. *See Barker v. Norman,* 651 F.2d 1107, 1123–24 (5th Cir. 1981) (summary judgment inappropriate if there are conflicting versions of what defendant actually did).

■ Defendant's second argument for dismissal is that no subject matter jurisdiction exists over the tort claims because the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–2680 (1965), is the exclusive remedy for claims against a federal agent or officers acting within the scope of his or her employment. This argument is without merit. Under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), the plaintiff may obtain money damages for injuries suffered as a result of a federal agent's violation of the fourth amendment. *Id.* at 397, 91 S.Ct. at 2005. In *Thornwell v. United States,* 471 F.Supp. 344 (D.C.D.C.1979), the court noted that while the FTCA may provide the federal remedy, Congress never intended the Act as the exclusive remedy for the tortious conduct of federal officials. The 1974 amendments to the FTCA did not preclude a *Bivens* action against individual government agents. *See Thornwell,* 471 F.Supp. at 354–55; *Druckenmiller v. United States,* 548 F.Supp. 193, 195 (E.D.Pa.1982); S.Rep. No. 558 93d Cong., 2d Sess. 3 (1974), U.S. Code Cong. & Admin.News 1974 p. 2789.

Since the FTCA is not plaintiff's exclusive remedy for all claims against a federal agent, defendant's motion for summary judgment on that ground is also inappropriate.

### III. CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is denied.

An appropriate order follows.