603 F.Supp. 239 (1985)
In re "AGENT ORANGE" PRODUCT LIABILITY LITIGATION.[*]
MDL No. 381 (JBW).
United States District Court, E.D. New York.
February 11, 1985.
*240 *241 Stephen J. Schlegel, Schlegel & Trafelet, Ltd., Chicago, Ill., Benton Musslewhite, Law Offices of Benton Musslewhite, Inc., Houston, Tex., Thomas Henderson, Henderson & Goldberg, Pittsburgh, Pa., Phillip E. Brown, Hoberg, Finger, Brown, Cox & Molligan, San Francisco, Cal., Stanley Chesley, Waite, Schneider, Bayless & Chesley, Cincinnati, Ohio, John Q. O'Quinn, O'Quinn & Hagans, Houston, Tex., Neil R. Peterson and Gene Locks, Greitzer & Locks, Philadelphia, Pa., Newton B. Schwartz, Houston, Tex., Irving Like, Reilly, Like & Schneider, Babylon, N.Y., David J. Dean, Dean, Falanga & Rose, Carle Place, N.Y., Aaron Twerski, Hempstead, N.Y., of counsel; Robert A. Taylor, Jr., Ashcraft & Gerel, Washington, D.C., H. Kelly Jones, Cayce, S.C., Leonard W. Schroeter, Schroeter, Goldmark & Bender, Seattle, Wash., Anne E. Meroney, Smith & Meroney, Atlanta, Ga., Douglas F. Patrick, Foster, Covington & Patrick, Greenville, S.C., Ronald L. Wolf, Litvin, Blumberg, Matusow & Young, Philadelphia, Pa., Lawrenceville, Va., for plaintiffs.
Linwood W. Hinson, pro se.
Richard K. Willard, Jeffrey Axelrad, Arvin Maskin, Leon B. Taranto, Robert C. Longstreth, Washington, D.C.; Raymond J. Dearie, U.S. Atty., Brooklyn, N.Y., for U.S., defendant.

MEMORANDUM, ORDER AND JUDGMENT
WEINSTEIN, Chief Judge:
Plaintiffs, Vietnam War veterans and members of their families, sue the United States government to recover damages for injuries allegedly suffered as a result of exposure to Agent Orange in Vietnam. The government has moved to dismiss or, in the alternative, for summary judgment in cases in which it is the only defendant as well as in cases in which it is named as a defendant along with the manufacturers of Agent Orange. For the reasons indicated, the motion must be granted.

I. PROCEDURAL HISTORY IN BRIEF
The history of the "Agent Orange" litigation is set forth in the Preliminary Memorandum and Order on Settlement, 597 F.Supp. 740 (E.D.N.Y.1984). On October 30, 1984 and again on December 10, 1984, the court orally denied plaintiffs' motion for class certification against the government for reasons stated on the record and *242 summarized below. Subsequently, the government renewed a prior motion to dismiss and moved for summary judgment; oral argument was heard on December 10, 1984. On January 24, 1985, counsel for a number of the plaintiffs moved for voluntary dismissal of the children's direct claims for genetic damage.
The government's motion to dismiss the complaint must be granted, as a matter of law, as to the claims by veterans and the derivative claims by their wives and children. The government's motion for summary judgment must be granted, as a matter of fact, as to the independent claims of plaintiffs' wives. As to the independent claims of the minor children, they are dismissed voluntarily and without prejudice in the court's discretion.

II. CLASS CERTIFICATION
Plaintiffs Dan and Christina Ford moved pursuant to Rule 23 of the Federal Rules of Civil Procedure for class certification of all claims asserted against the United States under the Eighth Amended Complaint in Civil Action No. 79-747. Whether to certify a class is a decision "peculiarly within the discretion of the trial judge." Becker v. Schenley Industries, Inc., 557 F.2d 346, 348 (2d Cir.1977); see also City of New York v. International Pipe & Ceramics Corp., 410 F.2d 295, 298 (2d Cir.1969) ("judgment of trial judge should be given the greatest respect and the broadest discretion, particularly if, as here, he has canvassed the factual aspects of the litigation."). As explained in the transcript of oral argument, the court has carefully considered the factual aspects of the litigation. Among the factors considered is that the enormous expenditure required to notify potential class members is not justified given the almost nonexistent possibility of recovery against the government on the merits. While plaintiffs have thus far adduced only minimal proof that Agent Orange caused their injuries, studies are continuing. Certifying a class would give res judicata effect to this court's granting of summary judgment in favor of the government. It would be unfair to preclude children with birth defects  both born and unborn  from someday using studies that may possibly establish the validity of their claims against the government.

III. THE GOVERNMENT'S MOTION TO DISMISS CLAIMS OF VIETNAM VETERANS
Plaintiffs Vietnam veterans' claims against the government rest on a number of grounds: statutory, international law, and constitutional. The United States moves to dismiss each of these claims. Because the statutory ground is dispositive, the others need not be addressed. Cf. Ashwander v. Tennessee Valley Authority, 297 U.S. 288, 346-49, 56 S.Ct. 466, 482-84, 80 L.Ed. 688 (1936) (Brandeis, J., concurring).
Plaintiff veterans seek to impose liability upon the government under the Federal Tort Claims Act. 28 U.S.C. § 1346(b). The Act waives the United States' immunity from suit with certain important exceptions.

A. Introduction: The Feres Exception

One such exception was first enunciated in Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). It held that a member of the armed forces cannot sue the government in tort for injuries that "arise out of or are in the course of activity incident to service." Id., 340 U.S. at 146, 71 S.Ct. at 159. As subsequently interpreted, this judicially-created exception to the United States' waiver of sovereign immunity was found to rest on three grounds:
1. The existence of a separate, uniform, comprehensive, no-fault compensation scheme for members of the armed forces administered by the Veterans' Administration, similar in effect to workers' compensation plans;
2. The adverse impact on military discipline and effectiveness were servicepersons allowed to sue the government, United States v. Brown, 348 U.S. 110, 112, 75 S.Ct. 141, 143, 99 L.Ed.2d 139 (1954); and
*243 3. The distinctively federal nature of the relationship between the United States and members of the armed forces which would make it unfair and irrational to have "the Government's liability to members of the armed services dependent on the fortuity of where the soldier happened to be stationed at the time of injury." Stencel Aero Engineering Corp. v. United States, 431 U.S. 666, 671, 97 S.Ct. 2054, 2058, 52 L.Ed.2d 665 (1977).
The applicability of the Feres doctrine to bar the veterans' claims  and the derivative claims by wives and children based on such theories as loss of earnings and services  has been considered on two prior occasions in the course of deciding the defendant chemical companies' third-party claims against the government. See In re "Agent Orange" Product Liability Litigation, 506 F.Supp. 762 (E.D.N.Y.1980); In re "Agent Orange" Product Litigation, 580 F.Supp. 1242 (E.D.N.Y.), mandamus denied, In re United States, 733 F.2d 10 (2d Cir.), appeal dismissed, In re "Agent Orange" Product Liability Litigation, 745 F.2d 161 (2d Cir.1984). The implicit ruling against the veterans and the derivative claims of their wives and children in these cases was made explicit in Ryan v. Cleland, 531 F.Supp. 724, 728 (E.D.N.Y.1982); see, C. Wright, A. Miller & E. Cooper, 18 Federal Practice and Procedure § 4477 at 788-89 (1981). No reason has been advanced for departing from the law of the case regarding the veterans' claims against the government or the derivative claims of the wives and children. Cf. Dictograph Products Co. v. Sonotone Corp., 230 F.2d 131, 135 (2d Cir.1956) (Hand, J.) (law of case doctrine, although discretionary, is a matter of sound judicial practice).

B. Claims "Incident to Service"

There is no question that the veterans' claims against the government for injuries arising from exposure to Agent Orange while in Vietnam are "incident to service" and barred by the Feres doctrine. See 506 F.Supp. at 776. Such claims implicate all three elements of the Feres rationale. The first Feres factor  the existence of a comprehensive, no-fault veterans' compensation scheme  is especially relevant in light of Congress's recent enactment of legislation aimed at compensating veterans exposed to Agent Orange. The Veterans' Dioxin and Radiation Exposure Compensation Standards Act of 1984, Pub.Law No. 98-542, 98 Stat. 2725 (1984), establishes a commission to study the effects of exposure to dioxin and creates a presumption of causation with respect to two of the injuries alleged to result from such exposure  chloracne and porphyria cutanea tarda. See id. at §§ 6 and 9(a). Congress has chosen to create these statutory presumptions notwithstanding its conclusion that there is "insufficient credible scientific evidence" to support them. House Rpt. No. 98-592 (Veterans' Affairs Comm., Jan. 25, 1984), reprinted in 1984 U.S.Code Cong. & Ad.News 4449, 4453. Congress's decision to legislate in this area tends to confirm the view that Feres remains in force.

C. Post-Discharge Failure to Warn

In an effort to avoid the Feres bar, plaintiffs allege that the government's tortious conduct occurred "post-discharge." More specifically, plaintiffs claim that towards the end of the Vietnam War and subsequently, the government experienced an "explosion of knowledge" regarding the harmful effects of exposure to Agent Orange, yet failed to warn plaintiffs and see to it that they were properly treated and compensated for any injury sustained. Plaintiffs argue that this failure exposes the government to liability under the Federal Tort Claims Act as well as under the Constitution and under the Veterans Benefits Act, 38 U.S.C. § 240. The latter two contentions have been rejected by this court in a previous opinion and need not be reconsidered here. See Ryan v. Cleland, 531 F.Supp. 724, 728 (E.D.N.Y.1982).
Plaintiffs' attempt to circumvent the Feres limitation by pleading post-discharge theories has been explicitly considered and found wanting. See In re "Agent Orange" Product Liability Litigation, 506 F.Supp. 762, 777-80 (E.D.N.Y.1980). Plaintiffs had relied primarily on two classes of cases *244 that have found post-discharge negligence or failure to warn not barred by Feres.
The first kind is exemplified by Schwartz v. United States, 230 F.Supp. 536 (E.D.Pa. 1964). In that case, a military hospital treated a serviceman for his sinus condition by inserting radioactive dye. After discharge the Veterans Administration negligently failed to remove the dye and plaintiff contracted cancer. The court found that Feres did not bar his claims because the government's actionable negligence lay in the Veterans Administration's subsequent failure to diagnose and treat plaintiff's problem.
In the instant case, unlike Schwartz, "plaintiff's claim of post-discharge failure to warn does not present a separate and distinct act of post-discharge negligence on the part of the government." 506 F.Supp. at 778. This is not a case of a veteran who was treated negligently in a Veterans Hospital after discharge.
The second kind of failure to warn situation in which Feres has been held not to bar suit is exemplified by Thornwell v. United States, 471 F.Supp. 344 (D.D.C. 1979). There, a former serviceman alleged that he was intentionally drugged with LSD as part of a secret government experiment and that after discharge, the government failed to warn him of medical risks incurred by exposure. The Thornwell court held that Feres would not bar the suit because plaintiff alleged a distinct act of negligence after his discharge  the government representatives' failure to exercise the "duty of care ... to rescue him from the position of danger which they had created...." 471 F.Supp. at 351. In a similar case the wife of a deceased serviceman sued the government claiming that it had forced her husband to participate in military maneuvers less than one hour after detonation of a nuclear blast as an experimental project to test the effects of nuclear radiation. Everett v. United States, 492 F.Supp. 318 (S.D.Ohio 1980). The Everett court, following Thornwell, found that Feres would not bar the claim because it involved an intentional act incident to service plus a separate wrong of post-discharge negligence. These cases are quite different from the veterans' "Agent Orange" suit. The veterans do not claim that the government "caused them intentional harm by subjecting them to a form of human experimentation." 506 F.Supp. at 779. Instead, the veterans concede, as they must, that the government used Agent Orange in Southeast Asia to accomplish military objectives. Id.
Plaintiffs in their Memorandum in Opposition to the Government's Motion to Dismiss offer no reason to depart from this court's prior ruling. In addition to the cases already discussed, they cite several cases involving exposure to radiation. Broudy v. United States, 661 F.2d 125 (9th Cir.1981), after remand, 722 F.2d 566 (9th Cir.1983); Targett v. United States, 551 F.Supp. 1231 (N.D.Cal.1982); Seveney v. United States Government, Dept. of Navy, 550 F.Supp. 653 (D.R.I.1982). These cases are distinguishable for several reasons. First, the servicemen in these cases were exposed to such large doses of radiation as to approach the level of intentional experimentation found in Everett. Second, they involved exposure to radiation, a substance considered far more likely to cause adverse health effects than was Agent Orange. Finally, imposing on the Veterans' Administration a duty to warn of the uncertain consequences of Agent Orange exposure might well encounter another hurdle  the discretionary function exception to the Federal Tort Claims Act. 28 U.S.C. § 2680(a). Cf. United States v. Varig Airlines, ___ U.S. ___, 104 S.Ct. 2755, 2765, 81 L.Ed.2d 660 (1984). In contrast to the radiation experiments, the decision to use herbicides in Vietnam was made by President Kennedy and had the military objectives of clearing underbrush and jungle that provided cover for the enemy and of denying food for opposing forces who were living off the land.
In sum, plaintiffs' claims of post-discharge negligence were "inseparably entwined" with their military service and so barred by Feres. Healy v. United States, *245 192 F.Supp. 325, 328 (S.D.N.Y.), aff'd on opinion below, 295 F.2d 958 (2d Cir.1961). The conclusion that "[t]he important and well established principles of the Feres doctrine cannot be circumvented by inventive presentation or artful pleading [that] attempts to create an actionable post-discharge claim out of what is in reality a claim of continuing neglect," remains applicable to all the claims currently before the court. In re "Agent Orange" Product Liability Litigation, 506 F.Supp. 762, 779 (E.D.N.Y.1980). The post-discharge claims must be dismissed.

D. Pre-Induction Claims of Negligence

Counts 1 through 28 of the Eighth Amended Complaint in Civil Action No. 79-747 allege numerous acts of negligence on the part of the United States occurring prior to the veterans' induction. In essence these counts assert that prior to the induction of many of the servicemen who served in Vietnam, the United States knew or should have known of the hazards posed by exposure to Agent Orange and negligently failed to warn servicemen or take precautions for their safety  notwithstanding the United States' alleged thorough involvement in the manufacture of the herbicides. Pre-induction knowledge claims may be pleaded alternatively with post-discharge theories. MacFarlane v. Grasso, 696 F.2d 217, 224-25 (2d Cir.1982).
Pre-induction negligence claims must be classified as an attempt to circumvent the Feres bar through "artful pleading." Even if the government's negligent conduct occurred prior to a serviceman's induction, his exposure to and alleged injury from Agent Orange "arises out of" his military service. Allowing such a suit to go forward would undermine all three elements of the Feres doctrine. See Healy v. United States, 192 F.Supp. 325 (S.D.N.Y.), aff'd on opinion below, 295 F.2d 958 (2d Cir.1961). In Healy, plaintiff alleged that when as a civilian he was tested prior to induction, an Air Force physician negligently failed to detect a heart condition that would have disqualified him from military service. Activity during basic training aggravated his heart condition, resulting in hospitalization. Feres barred the lawsuit for the reason that:
To allow this claim to be encompassed within the Federal Tort Claims Act would, in large measure, devitalize the effect of the Feres holding which Congress thus far has not seen fit to overturn: it would open the floodgates of litigation to claims inextricably wound up with active military service incidents.
Id. at 329.

E. Intentional Torts

Counts 19, 20, 47, 48, 67, 68, 81, 82, 89, 95, 99, and 100 of the Eighth Amended Complaint in Civil Action No. 74-747 assert that the United States intentionally committed tortious acts against the plaintiffs. The Second Circuit has held that the policy considerations underlying the Feres doctrine apply with equal force to intentional torts. Kohn v. United States, 680 F.2d 922, 925-26 (2d Cir.1982). Plaintiffs' allegations of intentional torts, therefore, do not overcome the Feres bar.
All plaintiffs' efforts to circumvent the Feres doctrine through reliance on post-discharge, pre-induction, and intentional torts must fail. The government's motion to dismiss the complaints against it by veteran plaintiffs is granted. These same cases also involve claims by members of the veterans' families. Derivative claims, such as those for loss of society, comfort, companionship, services, consortium, guidance, and support, are equally barred by Feres. See In re "Agent Orange" Product Liability Litigation, 506 F.Supp. 762, 780 (E.D.N.Y. 1980).

IV. INDEPENDENT CLAIMS BY VETERANS' WIVES AND CHILDREN
A number of the wives and children of veterans also assert independent claims against the government. The wives allege that they suffered miscarriages as a result of damage to the husbands' sperm caused by Agent Orange exposure. The children *246 claim that they were born with birth defects as a result of their fathers' exposure.
The court has previously concluded that the independent claims of the wives and children are not, as a matter of law, barred by Feres. See In re "Agent Orange" Product Liability Litigation, 580 F.Supp. 1242, 1247-54 (E.D.N.Y.1984). Nevertheless, plaintiffs must come forward with some evidence of their contentions to withstand the government's motion for summary judgment. Federal rules of Civil Procedure, Rule 56(e).
In support of its motion, the government relies upon the entire record in this MDL litigation and in particular the Affidavit of Dr. Zena Stein. Dr. Stein concludes that "no laboratory nor epidemiologic evidence exists at this time that is sufficient, to a reasonable degree of certainty or probability, to link embryonal deaths or birth defects to paternal exposure to herbicides while serving in Vietnam." This conclusion is based on leading epidemiological studies. See generally, Dore, A Commentary on the Use of Epidemiological Evidence in Demonstrating Cause-in-Fact, 7 Harv.Envtl.L.Rev. 429 (1983). The court has, in addition, read the many other studies that are part of the record in the MDL litigation. Judicial notice is taken of the entire record in the files of this court, including these studies. See, e.g., St. Louis Baptist Temple, Inc. v. Federal Deposit Ins. Corp., 605 F.2d 1169, 1171-72 (10th Cir.1979); United States v. Jackson, 712 F.2d 1283, 1287 (8th Cir.1983); Baldwin v. Local 843, International Brotherhood of Teamsters, 562 F.Supp. 36, 38 (D.N.J.1982); see also Bulova Watch Co., Inc. v. K. Hattori & Co., Ltd., 508 F.Supp. 1322 (E.D.N.Y.1981) (judicial notice may be taken in deciding motions).
Properly developed epidemiological evidence is sound, can be reliable, is well accepted in the scientific and legal communities, and must be relied upon in cases such as this. Cf. United States v. Downing, 753 F.2d 1224 (3d Cir.1985) (rejecting Frye test in favor of a more flexible relevance-prejudice analysis incorporating helpfulness standard of Federal Rule of Evidence 702). Yet, like most other forms of expert evidence, it is subject to abuse. Thus, particular care needs to be taken in examining the bases of the expert opinions proffered. Here, there can be no doubt that the government expert's analysis is the only one presently acceptable as a matter of science and law.
The studies to date conclude that there is as yet no epidemiological evidence that paternal veteran exposure to Agent Orange causes birth defects or miscarriages. See, e.g., Erickson, Mulinare, et al., "Vietnam Veterans' Risks for Fathering Babies with Birth Defects," 252 J.A.M.A. 903-12 (1984) and J.D. Erickson, J. Mulinare, et al., Vietnam Veterans' Risks for Fathering Babies with Birth Defects, published by the U.S. Department of Health and Human Services, Public Health Service, Centers for Disease Control (August, 1984) ("CDC study"); J.W. Donovan, et al., Case-control Study of Congenital Anomalies and Vietnam Service (Birth Defects Study): Report to the Minister for Veterans' Affairs, January 1983, published by Australian Government Publishing Service, Canberra (1983) ("Australian study"); Donovan, MacLennan and Andena, Vietnam service and the risk of congenital anomalies, 140 Med.J. of Australia 394 (March 31, 1984). See also, e.g., the discussion of lack of proof of causation in In re "Agent Orange" Product Liability Litigation, 597 F.Supp. 740, 749, 775-95 (E.D.N.Y.1984).
In a comprehensive epidemiological examination of ninety-six categories of birth defects occurring among subsequently conceived offspring of American servicemen who served in Vietnam, the authors of the CDC study concluded: "This study provides strong evidence that Vietnam veterans, in general, have not been at increased risk of fathering babies with the aggregate of the types of defects studied here." CDC study at 2. The CDC study further concluded:
At present, no adverse human reproductive effects have been shown to be related to exposure to phenoxy herbicides and dioxin. Evidence and concern *247 for such ill effects come from animal experiments. These adverse outcomes occur by administering the chemicals to pregnant females at critical times during gestation (e.g., Courtney and Moore, 1971). In all animal experiments in which paternal exposures have been evaluated, results have been negative.

* * * * * *
From the few studies done, there is no conclusive evidence that 2, 4, 5-T or dioxin has caused adverse reproductive outcomes in humans. In certain animal species, when pregnant females were exposed, their offspring have had birth defects. However, in no species have fathers' exposures been shown to cause congenital defects in offspring.
Id. at 67. (Emphasis supplied.)
The conclusions of the Australian study are similarly negative:
There is no evidence that Army service in Vietnam increases the risk of fathering children with anomalies diagnosed at birth.
Donovan, MacLennan and Andena, Vietnam service and the risk of congenital anomalies, 140 Med.J. of Australia 394 (March 31, 1984). See also CDC study at 6-7 (number of offspring of Vietnam veterans with serious birth defects no greater than the population at large); cf. House Rept. No. 98-592 on Veterans' Dioxin and Radiation Exposure Compensation Standards Act, reprinted in 1984 U.S.Code Cong. & Ad.News 4449, 4453 ("insufficient credible scientific evidence" that veterans exposed to Agent Orange are experiencing higher incidence of medical problems).
Plaintiffs have produced no evidence of any probative value to contradict the government's overwhelming showing of no present proof of causation. In the case of Ford v. United States, CV-79-747, plaintiffs rely upon expert affidavits and depositions for their contention that causation presents a material issue of fact. In particular the Ford plaintiffs offer the testimony of Doctors Legator, Levin, Silbergeld, Barsotti, Hatch, and Hay. Pl.Br. at 28-30. We put aside the fact that the Ford complaint involves no children since the court is taking judicial notice of all the records in all related litigation now before it under MDL No. 381.
The conclusions reached by the Ford experts are themselves guarded and unpersuasive. See, e.g., Deposition of Dr. Maureen Hatch at 57 ("I'm not convinced without further evidence that there was a causal relationship between Agent Orange and neonatal deaths."). In addition, there is no factual foundation for any expert opinion sufficient under Federal Rule of Evidence 703 to withstand summary judgment. See, e.g., Merit Motors, Inc. v. Chrysler Corp., 569 F.2d 666 (D.C.Cir.1977); cf. Barrel of Fun, Inc. v. State Farm Fire & Casualty Co., 739 F.2d 1028, 1033 (5th Cir.1984).
In most of the cases against the government plaintiffs' counsel moved for voluntary dismissal under Rule 41(a)(2) of the minor childrens' independent claims. The court agrees that it would be both reasonable and fair to avoid dismissing the childrens' claims on the merits when the scientific evidence may not as yet have been fully developed. Louis v. Bache Group, Inc., 92 F.R.D. 459, 460-61 (S.D.N. Y.1981). The government, consistent with its harsh and unyielding view of its relationship to the veterans, their wives and children in this litigation, In re Agent Orange Product Liability Litigation, 597 F.Supp. 740, 879 (E.D.N.Y.1984), strongly urges that the infants' cases be dismissed on the merits and with prejudice so that they can never sue again, even if evidence subsequently shows that they have a valid claim against the government.
Rule 41(a)(2) of the Federal Rules of Civil Procedure grants the court broad discretion to permit a voluntary withdrawal without prejudice at this stage of the litigation. LeCompte v. Mr. Chip, Inc., 528 F.2d 601, 604 (5th Cir.1976). Absent a showing of substantial harm to the defendant, discretion should generally be exercised in favor of an infant who lacks evidence to support his or her claim but who may obtain such evidence in the future. Added reason to *248 favor the infants exists when, as here, following the governments' view would bar a handful of children who have already sued while leaving the thousands of potential claimants who have not sued free to do so in the future.
A vindictive attitude on the part of the government towards the few on whose behalf a suit was filed is particularly inappropriate because plaintiffs' attorneys have done little to advance the case during the many years it has been pending. Thus, these cases have placed no substantial burden on the government. Zimpro Inc. v. United States Envtl. Protection Agency, 83 F.R.D. 302, 304 (N.D.N.Y.1979); Vienneau v. Shanks, 78 F.R.D. 70 (D.Wisc. 1978).
The prospect of defending a future lawsuit by these plaintiffs does not constitute "plain legal prejudice" to the government. Hamilton v. Firestone Tire & Rubber Co., 679 F.2d 143 (9th Cir.1982); Holiday Queen Land Corp. v. Baker, 489 F.2d 1031 (5th Cir.1974) (per curiam).
It would be unfair to dismiss on the merits the claims of infant children whose counsel did not move for voluntary dismissal. All infants' claims are, therefore, dismissed without prejudice.

CONCLUSION
In all cases currently pending against the government, summary judgment is granted against all claims direct or derivable of the veterans and their wives and against all of the children's derivative claims. Direct claims by the children are dismissed without prejudice. No costs or disbursements are granted.
The list of cases being dismissed in which the government alone is defendant is as follows: Brennon v. Federal Gov't of the United States, No. 82-299; Anderson v. Federal Gov't of the United States, No. 82-767; Clark v. Federal Gov't of the United States, No. 82-771; High v. United States, No. 82-777; Archibald v. Federal Gov't of the United States, No. 82-778; Patrick v. Cleland, No. 82-779; Aguiar v. United States, No. 82-780; Blackmon v. United States, No. 82-781; Johnson v. Federal Gov't of the United States, No. 82-782; Reed v. Federal Gov't of the United States, No. 82-785; Rowland v. United States, No. 82-788; Batts v. Federal Gov't of United States, No. 82-855; Dockery-Bay v. Federal Gov't of the United States, No. 82-856; Dickerson v. Federal Gov't of the United States, No. 82-1140; Fekete v. Federal Gov't of the United States, No. 82-1141; Thomas v. Federal Gov't of the United States, No. 82-1753; Gibbs v. Federal Government of the United States, No. 82-1850; Baker v. Federal Gov't of the United States, No. 82-2594; Plavner v. United States, No. 83-907; Hinson v. United States, No. 84-3819.
The court previously dismissed other cases in which the government was the sole defendant. The list is as follows: Loughery v. United States, No. 81-664; Valdez v. Cleland, No. 81-908; Strait v. Cleland, No. 81-909; Hannah v. U.S. Dept. of Defense, No. 81-3816; Clift v. U.S. Dept. of Defense, No. 81-3817; Stevenson v. U.S. Dept. of Defense, No. 81-3818; Bennis v. Cleland, No. 82-214; Hall v. United States, No. 82-686; Burnham v. United States, No. 82-766; Petty v. Veterans Administration, No. 82-769; Wehunt v. Veterans Administration, No. 82-770; Edwards v. Veterans Administration, No. 82-772; Reid v. United States, No. 82-774; Napier v. United States, No. 82-787; Burke v. United States, No. 82-858; Alexander v. United States, No. 82-859; Searcy v. United States, No. 82-1119; Jordan v. United States, No. 82-1264; Lambert v. United States, No. 82-1390; Kitaki v. United States, No. 82-1391; Jordan v. United States, No. 82-2009; Watson v. United States, No. 82-2292; Gardner v. United States, No. 82-3107; Matthews v. United States, No. 83-20; Graves v. U.S. Dept. of Defense, No. 83-3123; Graves v. U.S. Dept. of Defense, No. 83-3124; Zumwalt v. U.S. Dept. of Defense, No. 84-2456; Benbenek v. Cleland, No. 81-666.
In addition, cases in which both the government and chemical companies are defendants are or have been dismissed as to all claims against the government. The *249 list is as follows: Ford v. United States, No. 79-747; Armstrong v. Dow Chemical Co., No. 81-2728; Baird v. Dow Chemical Co., No. 80-1277; Balzano v. Dow Chemical Co., No. 79-525; Berg v. Dow Chemical Co., No. 81-943; Brewer v. Dow Chemical Co., No. 81-504; Burke v. Dow Chemical Co., No. 82-857; Butt v. Dow Chemical Co., No. 83-3121; Caldwell v. Dow Chemical Co., No. 82-4031; Chapman v. Dow Chemical Co., No. 79-1195; Clark v. Dow Chemical Co., No. 83-627; Clark v. Dow Chemical Co., No. 83-633; Claxton v. Dow Chemical Co., No. 79-527; Curti v. Dow Chemical Co., No. 79-526; De Bonis v. Dow Chemical Co., No. 82-215; Dowd v. Dow Chemical Co., No. 79-467 (still pending as to certain intervenors; on appeal) Dunn v. Dow Chemical Co., No. 83-4030; Gardner v. Dow Chemical Co., No. 82-776; Green v. Dow Chemical Co., No. 79-1194; Griffen v. Dow Chemical Co., No. 80-1276; Jupin v. Dow Chemical Co., No. 79-1201; Justice v. Dow Chemical Co., No. 81-2345; Martin v. Dow Chemical Co., No. 81-2343; McNichol v. Dow Chemical Co., No. 79-3206; Mees v. Dow Chemical Co., No. 81-512; Newton v. Dow Chemical Co., No. 81-501; Parham v. Dow Chemical Co., No. 81-2344; Peteet v. Dow Chemical Co., No. 79-2846; Petrusha v. Dow Chemical Co., No. 80-1281; Petty v. Dow Chemical Co., No. 80-3259; Reutershan v. Dow Chemical Co., No. 79-1197; Skillings v. Dow Chemical Co., No. 79-1198; Smith v. Dow Chemical Co., No. 81-2339; Smith v. Dow Chemical Co., No. 79-1200; Steinberg v. Dow Chemical Co., No. 79-1199; Snider v. Dow Chemical Co., No. 82-789; Thornton v. Dow Chemical Co., No. 81-659; Tiranti v. Dow Chemical Co., No. 79-1196; Watson v. Dow Chemical Co., No. 81-502; Wehunt v. Dow Chemical Co., No. 81-910; Wilson v. Dow Chemical Co., No. 82-1389; Wrinn v. Dow Chemical Co., No. 81-1200; Xirau v. Dow Chemical Co., No. 79-528.
This memorandum constitutes a final judgment.
SO ORDERED.
NOTES
[*] Loughery v. United States, No. 81-664; Valdez v. Cleland, No. 81-908; Strait v. Cleland, No. 81-909; Hannah v. U.S. Dept. of Defense, No. 81-3816; Clift v. U.S. Dept. of Defense, No. 81-3817; Stevenson v. U.S. Dept. of Defense, No. 81-3818; Bennis v. Cleland, No. 82-214; Hall v. United States, No. 82-686; Burnham v. United States, No. 82-766; Petty v. Veterans Administration, No. 82-769; Wehunt v. Veterans Administration, No. 82-770; Edwards v. Veterans Administration, No. 82-772; Reid v. United States, No. 82-774; Napier v. United States, No. 82-787; Burke v. United States, No. 82-858; Alexander v. United States, No. 82-859; Searcy v. United States, No. 82-1119; Jordan v. United States, No. 82-1264; Lambert v. United States, No. 82-1390; Kitaki v. United States, No. 82-1391; Jordan v. United States, No. 82-2009; Watson v. United States, No. 82-2292; Gardner v. United States, No. 82-3107; Matthews v. United States, No. 83-20; Graves v. U.S. Dept. of Defense, No. 83-3123; Graves v. U.S. Dept. of Defense, No. 83-3124; Zumwalt v. U.S. Dept. of Defense, No. 84-2456; Benbenek v. Cleland, No. 81-666, Brennon v. United States, No. 82-299; High v. United States, No. 82-777; Patrick v. Veterans Administration, No. 82-779; Aguiar v. United States, No. 82-780; Blackmon v. United States, No. 82-781; Rowland v. United States, No. 82-788; Thomas v. United States, No. 82-1753; Plavner v. United States, No. 83-907; Archibald v. United States, No. 82-778; Dockery-Bay v. United States, No. 82-856; Anderson v. United States, No. 82-767; Clark v. United States, No. 82-771; Johnson v. United States, No. 82-782; Reed v. United States, No. 82-785; Batts v. United States, No. 82-855; Dickerson v. United States, No. 82-1140; Fekete v. United States, No. 82-1141; Gibbs v. United States, No. 82-1850; Baker v. United States, No. 82-2594; Hinson v. United States, No. 84-3819; Armstrong v. Dow Chemical Co., No. 81-2728; Baird v. Dow Chemical Co., No. 80-1277; Balzano v. Dow Chemical Co., No. 79-525; Berg v. Dow Chemical Co., No. 81-943; Brewer v. Dow Chemical Co., No. 81-504; Burke v. Dow Chemical Co., No. 82-857; Butt v. Dow Chemical Co., No. 83-3121; Caldwell v. Dow Chemical Co., No. 82-4031; Chapman v. Dow Chemical Co., No. 79-1195; Clark v. Dow Chemical Co., No. 83-627; Clark v. Dow Chemical Co., No. 83-633; Claxton v. Dow Chemical Co., No. 79-527; Curti v. Dow Chemical Co., No. 79-526; De Bonis v. Dow Chemical Co., No. 82-215; Dowd v. Dow Chemical Co., No. 79-467; Dunn v. Dow Chemical Co., No. 83-4030; Gardner v. Dow Chemical Co., No. 82-776; Green v. Dow Chemical Co., No. 79-1194; Griffen v. Dow Chemical Co., No. 80-1276; Jupin v. Dow Chemical Co., No. 79-1201; Justice v. Dow Chemical Co., No. 81-2345; Martin v. Dow Chemical Co., No. 81-2343; McNichol v. Dow Chemical Co., No. 79-3206; Mees v. Dow Chemical Co., No. 81-512; Newton v. Dow Chemical Co., No. 81-501; Parham v. Dow Chemical Co., No. 81-2344; Peteet v. Dow Chemical Co., No. 79-2846; Petrusha v. Dow Chemical Co., No. 80-1281; Petty v. Dow Chemical Co., No. 80-3259; Reutershan v. Dow Chemical Co., No. 79-1197; Skillings v. Dow Chemical Co., No. 79-1198; Smith v. Dow Chemical Co., No. 81-2339; Smith v. Dow Chemical Co., No. 79-1200; Steinberg v. Dow Chemical Co., No. 79-1199; Snider v. Dow Chemical Co., No. 82-789; Thornton v. Dow Chemical Co., No. 81-659; Tiranti v. Dow Chemical Co., No. 79-1196; Watson v. Dow Chemical Co., No. 81-502; Wehunt v. Dow Chemical Co., No. 81-910; Wilson v. Dow Chemical Co., No. 82-1389; Wrinn v. Dow Chemical Co., No. 81-1200; Xirau v. Dow Chemical Co., No. 79-528.